UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRADLEY CARTER,

    Plaintiff,

v.                                               Case No: 8:13-cv-143-T-30TBM

FLORIDA AUTOMOTIVE SERVICES LLC,

    Defendant.
_____

## ORDER

THIS CAUSE comes before the Court upon Plaintiff's Motion for Summary Judgment (Dkt. 65) ("Plaintiff's Motion"), Defendant's Motion for Summary Judgment/Incorporated Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment (Dkt. 71) ("Defendant's Motion"), and Plaintiff's Supplement to Motion for Summary Judgment (Dkt. 73) ("Plaintiff's Supplement"). The Court, having reviewed Plaintiff's Motion, Defendant's Motion, Plaintiff's Supplement, record evidence, and being otherwise advised of the premises, concludes that Plaintiff's Motion should be denied and Defendant's Motion should be granted.

## BACKGROUND

In this employment action, Plaintiff Bradley Carter, proceeding *pro se*, brings a lawsuit against his former employer, Defendant Florida Automotive Services LLC, ("FAS"). FAS operates car dealerships throughout Florida, including Courtesy Toyota of Brandon ("Courtesy").

Plaintiff's First Amended Complaint alleges four counts against Defendant: (1) race discrimination under 42 U.S.C. § 1981 ("Section 1981"); (2) race discrimination under the Florida Civil Rights Act ("FCRA"); (3) national origin discrimination under the FCRA; and (4) retaliation under Section 1981 and the FCRA.  Plaintiff identifies himself as a black male individual of American origin.  Plaintiff's allegations relate primarily to perceived discriminatory employment practices by Defendant, including failure to promote Plaintiff to Finance Manager, termination of Plaintiff, hostile work environment, and retaliation.

Plaintiff began his employment at Courtesy on April 21, 2011, after applying and interviewing for a Sales Consultant position.  As a Sales Consultant, Plaintiff's duties included selling cars and prospecting to sell cars.  Sales Manager Keith Miller acted as Plaintiff's direct manager.

When Plaintiff began his employment at Courtesy, he received an Employee Handbook that contained Courtesy's policies regarding absenteeism, work schedules, and promotions, among other things.  Regarding absenteeism, the Employee Handbook stated:

> If you are going to be absent from work for any reason, you must **personally** notify your manager as far in advance as possible.  Some situations may arise in which prior notice cannot be given.   In those cases, we expect you to notify your manager as soon as possible.  PLEASE NOTE: Leaving a message with the receptionist or with a coworker, voice mail, or text message does not qualify as notifying your manager.  You must **personally** contact your manager or manager on duty **each day** you are going to be absent. When absence is due to illness, we reserve the right to require appropriate medical documentation.

The Employee Handbook also contained Courtesy's policy on work schedules,

2

which stated that "[a]ny changes made to your schedule must be approved by your manager." The work schedule policy also stated in bold font:

> **Violation of any of the stated handbook policies may lead to progressive discipline, up to and including termination. Although this handbook is a guide obviously this list is not all inclusive and there may be other circumstance [sic] for which employees may be disciplined, up to and including termination of employment.**

The Employee Handbook also contained a statement regarding Courtesy's policy regarding promotions:

> It is our policy to promote from within wherever possible. However, because we often have to fill key positions quickly, we cannot check with each qualified employee to see if he or she is interested in being considered for each opening. Therefore, if you are interested in a promotion to another position, please discuss it with your Department Manager. If you wish to be considered for a specific opening, please let your manager know with a brief memo. If you feel that you were not given fair consideration for a specific position, please discuss your concerns with the General Manager or Human Resources.

On April 21, 2011, Plaintiff signed a document acknowledging receipt of the Employee Handbook, stating that he understood he was responsible for reading the booklet in its entirety and being familiar with its content, and agreeing to accept and abide by the company policies and rules and regulations.

During the course of Plaintiff's employment, Sales Manager Jeremey Dodson occasionally commented on Plaintiff's manner of dress and vocabulary. Sales Manager Rollin Seeley reprimanded Plaintiff in front of customers and asked Plaintiff to serve as an example for other employees. Race was not directly mentioned during any of these incidents and no other FAS employees at issue in this case ever mentioned race to

3

Plaintiff.[1]

During the summer of 2011, Plaintiff contacted Human Resource Manager Jan Handley to express that he was interested in moving into a Finance Manager position. At the time there were no open Finance Manager positions in any of the FAS dealerships, including Courtesy. Several months later, on or about September 15, 2011, Plaintiff submitted an application for a Finance Manager position at FAS's Fort Pierce dealership. Plaintiff did not apply for or express interest in any other positions during his employment with Defendant.

In or around August 2011, a new position was created at Courtesy for a Delivery Coordinator. Sally Buck, a Caucasian Sales Consultant, was appointed to the position and began working as a Delivery Coordinator on September 1, 2011. Plaintiff continued working as a Sales Consultant and did not express interest in a Delivery Coordinator position either before or after Buck was appointed to the position.

On Wednesday, November 16, 2011, Plaintiff took the day off and was not scheduled to work. Despite this, Plaintiff went into work to help a customer. Plaintiff was scheduled to work the following day, Thursday, November 17, 2011. On Thursday, November 17, 2011, Plaintiff did not go into work. Plaintiff cannot specifically recall whether he contacted either Dodson or Seeley regarding his absence on November 17, 2011, however he believes he did call either Dodson or Seeley. Plaintiff returned to work

---

[1] Plaintiff's testimony describes an isolated incident while "slap boxing" with Seeley, in which Seeley allegedly stated "[w]ell, that's what you black guys do, you know, you box." Carter Dep. 250:6-17. Viewing the evidence in the light most favorable to Plaintiff, this stray comment is not actionable under the statutes cited by Plaintiff.

on Friday, November 18, 2011. While at work, Plaintiff engaged in a conversation with Seeley during which, Seeley asked Plaintiff where he was on November 17, 2011. Plaintiff responded "I took the day off – I took the day off because I had worked Wednesday." Seeley informed Plaintiff that a "no call no show" was a terminable offense. Plaintiff responded "[y]ou guys are going to do what you're going to do" and "this is ridiculous." Plaintiff was terminated thereafter.

In January 2012, a Finance Manager at Courtesy left his position, creating an opening for a Finance Manager at Courtesy. Alex Ertle, a Caucasian employee in the Manager In Training program at Courtesy, was promoted to Finance Manager and assumed the position in February 2012.

Both Plaintiff and Defendant now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all

justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

**I.   Plaintiff's Motion**

Plaintiff's Motion argues that he is entitled to summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Plaintiff's Motion is made up of disjointed, stream of consciousness arguments that complain in large part about Defendant's and Defendant's counsel's conduct during discovery. Legal citations contained in Plaintiff's Motion are

misplaced and distinguishable from the facts in the instant case.

Plaintiff references allegations in the First Amended Complaint that Defendant subjected Plaintiff to race and national origin discrimination to support his argument. Specifically, Plaintiff argues that he was treated less favorably than white employees because white employee, Ertle, was promoted to Finance Manager and Plaintiff was not. However, the portions of Plaintiff's Motion that address issues relevant to Plaintiff's claims are merely conclusory arguments, supported only by Plaintiff's affidavit, which is largely composed of information irrelevant to his claims, and his conclusory deposition testimony. Conspicuously absent from Plaintiff's Motion and the record is any direct or circumstantial evidence supporting Plaintiff's allegations.

It is well established that conclusory, self-serving affidavits are insufficient to create a genuine issue for trial. *Lapenna v. Gov't Employees Ins. Co.*, 8:05-CV-904-T-24MSS, 2007 WL 4199580, at *4 (M.D. Fla. Nov. 26, 2007) *aff'd*, 316 F. App'x 894 (11th Cir. 2009). This is especially the case where, as here, Defendant has submitted a well-supported summary judgment motion addressing each of the deficiencies in Plaintiff's Motion. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

For these reasons and as discussed below, Plaintiff's Motion is woefully insufficient to support a summary judgment ruling in Plaintiff's favor. Therefore, it is the Court's conclusion that Plaintiff's Motion should be denied.

## II. Defendant's Motion and Plaintiff's Supplement[2]

### A. Discrimination Claims Under Section 1981 and the FCRA[3]

Defendant's Motion argues that each of Plaintiffs claims fails as a matter of law and that there is no genuine issue of material fact in dispute. Defendant asserts there is no direct evidence of discrimination available in this case. And, Defendant argues, Plaintiff cannot make out a prima facie case of discrimination based on Defendant's failure to promote Plaintiff or Defendant's termination of Plaintiff. Defendant contends that Plaintiff's claims would fail even if Plaintiff had established a prima facie case as Defendant has offered legitimate, nondiscriminatory reasons for its employment decisions and Plaintiff has shown no evidence of pretext.

The essential elements of a Section 1981 employment discrimination claim are the same as a Title VII employment discrimination claim. *See Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1109 (11th Cir. 2001) (noting that elements of race discrimination claim under Section 1981 are the same as Title VII disparate treatment claim in employment context); *McNeal v. Tarrant*, 2009 WL 1132348, at *796 (11th Cir.

---

[2] Per this Court's Order, Plaintiff's Supplement was treated as a response to Defendant's Motion. (Dkt. 76).

[3] Throughout the First Amended Complaint, Plaintiff's deposition transcript, and Plaintiff's Motion, Plaintiff conflates discrimination claims based on race with those based on national origin. Because Plaintiff's race discrimination and national origin discrimination claims arise out of the same facts, and because courts have observed that the line between race and national origin is an "extremely difficult one to trace", the Court will analyze these claims together. *See Alvarado v. Boca Raton Cmty. Hosp.,* 2010 WL 3941826, at *10 n. 7 (S.D.Fla. Oct.6, 2010) (citations omitted).

April 28, 2009) (noting Section 1981 has the "same requirements of proof and uses the same analytical framework as Title VII"). This is also the case for claims under the FCRA. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). Decisions construing Title VII are applicable when considering claims under the FRCA because the Florida act was patterned after Title VII. *Id.*

A plaintiff may establish a prima facie case of discrimination by producing direct, circumstantial, or statistical evidence of discrimination by an employer. *Jackson v. Rooms To Go, Inc.*, 806-CV-01596-T-24EAJ, 2008 WL 2824814, at *5 (M.D. Fla. July 21, 2008) (citing *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998)). In the absence of direct evidence of racial discrimination, a plaintiff can assert a prima facie case of racial discrimination by alleging the elements of the *McDonnell Douglas* framework, i.e. that: "(1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees who are not members of the plaintiff's class more favorably; and (4) she was qualified for the job or job benefit at issue." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973); *see also Rice–Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 842-43 (11th Cir. 2000).

If a plaintiff can prove a prima facie case of employment discrimination, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas Corp.,* 411 U.S. at 802. If the Defendant meets this burden of production, the presumption of discrimination raised by the plaintiff's prima facie case is rebutted. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450

U.S. 248, 254-256, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981). A plaintiff must then show that the defendant's proffered legitimate, non-discriminatory reason is pretextual. *Id.* The plaintiff retains the burden of persuasion. *Id.* A plaintiff's subjective opinion that the defendant's action was discriminatory, without supportive evidence, is not sufficient to establish pretext to avoid summary judgment. *Woodbury v. Sears, Roebuck & Co.*, 901 F. Supp. 1560, 1565 (M.D. Fla. 1995) (citing *Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1985)).

>    1. Defendant's argument that Plaintiff cannot show discrimination based on failure to promote.

Defendant's Motion argues that Plaintiff has failed to present direct evidence or a prima facie case for discrimination based on failure to promote and therefore Defendant is entitled to summary judgment as a matter of law.

In order to make out make out a prima facie case for discrimination in a failure to promote case, the plaintiff needs to show: "(1) that he is a member of a protected class; (2) that he was qualified for and applied for the promotion; (3) that he was rejected; and (4) that other equally or less qualified employees who were not members of the protected class were promoted." *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001); *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004).

Viewing the evidence in the light most favorable to Plaintiff, Plaintiff has failed to show multiple elements necessary to make out a prima facie case for failure to promote with regard to the Finance Manager position. First, both Plaintiff and Handley's deposition testimony confirm that when Plaintiff originally expressed interest in the

Finance Manager position in the summer of 2011, there were no available Finance Manager positions throughout all of the FAS dealerships. Next, the only evidence of Plaintiff applying for a Finance Manager position shows that Plaintiff submitted an application several months later, on September 15, 2011. Significantly, Plaintiff was terminated approximately two months after he submitted his application, before he received any response on his application and before there were any openings for Finance Managers at Courtesy. Because of this, Plaintiff cannot show that his application for Finance Manager was rejected. Further, the record reflects that the posting for the Fort Pierce Finance Manager position for which Plaintiff applied required proven experience as a Finance and Insurance Manager. Plaintiff testified that he did not have any such experience. Thus, Plaintiff has not shown that he applied for and was qualified for the promotion and was rejected despite his qualifications.

Plaintiff's arguments regarding Ertle's later promotion also fail to show that an equally or less qualified employee who was not a member of the protected class was promoted. Record evidence also supports Defendant's legitimate, non-discriminatory reasoning for Ertle's later promotion. In a failure to promote case, a plaintiff cannot prove pretext by merely showing that he "was better qualified than the individual who received the position that she wanted.... 'Disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face.'" *Humphrey v. Potter*, 162 F. Supp. 2d 1354, 1363 (S.D. Fla. 2001) (citing *Lee v. GTE Florida, Inc.,* 226 F.3d 1249, 1253-54 (11th Cir. 2000). To prevail on his argument, therefore, Plaintiff must

demonstrate that the disparities in qualifications were such that "no reasonable person, in the exercise of impartial judgment," could have chosen Ertle over Plaintiff for the Finance Manager position. *See id*. Plaintiff has not done so here.

As an initial matter, Ertle was not promoted to the same Finance Manager position for which Plaintiff applied. Rather, Ertle was promoted several months after Plaintiff was terminated when a Finance Manger vacated his position at Courtesy, creating a new opening. Next, Plaintiff's arguments that Ertle did not "perform" better than Plaintiff are directly contradicted by the "pacing reports" he submits. The pacing reports indicate, among other things, the number of cars sold by each Sales Consultant from July 2011 through October 2011. These reports show that Plaintiff only sold more cars than Ertle in the month of August, after which point, Ertle sold substantially more cars each month than Plaintiff. This evidence contradicts Plaintiff's claim that Ertle "did not perform better than the Plaintiff did." Moreover, the record reflects that Ertle had a degree in Automotive Marketing & Management and was in the Manager In Training program, a specific program track in which a Finance Manager position is the first promotion available to well-performing participants. Defendant has stated that Ertle was promoted due to these qualifications and because of his participation in the Manager In Training program.

For these reasons, the Court concludes that Plaintiff has not offered sufficient evidence to survive Defendant's Motion on this issue.

Defendant's Motion also argues that Plaintiff failed make a prima facie case for discrimination based on Defendant's failure to promote with regard to the Delivery Coordinator position awarded to Buck. Defendant argues that Plaintiff's claim must fail

because Plaintiff never applied for or expressed interest in the Delivery Coordinator position. It is undisputed that Plaintiff never applied for the Delivery Coordinator position. Further, nothing in the record reflects that Plaintiff ever expressed an interest in the position. In response, Plaintiff's Supplement argues that the Delivery Coordinator position was never posted.

When there is no formal notice of the job's availability, a plaintiff may have no means, within his own knowledge, of showing whether the employer considered him or not. *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir. 1984). Under such circumstances, a plaintiff makes out a prima facie case by establishing that the defendant had some reason or duty to consider him for the post. *Id.*

Here, there is no evidence in the record that Plaintiff ever expressed interest in any position other than the Finance Manager position. Further, the Employee Handbook explicitly stated regarding promotions, "because we often have to fill key positions quickly, we cannot check with each qualified employee to see if he or she is interested in being considered for each opening. Therefore, if you are interested in a promotion to another position, please discuss it with your Department Manager." Plaintiff testified that he discussed his interest in the Finance Manager with Handley, rather than with General Manager, Paul Snedic. The record does not contain any evidence that Plaintiff ever discussed interest in or applications for any promotions with Snedic. Therefore, Plaintiff has not shown that Snedic had any reason or duty to consider Plaintiff for the Delivery Coordinator position.

In addition, the record reflects that Buck was selected for the newly created position

13

because of her outstanding customer service skills and outgoing personality. The record also shows that Delivery Coordinator position was created as an experiment, that Buck was the only employee to hold such a position, and that the position has since been eliminated. In response, Plaintiff has only submitted vague and conclusory allegations that Defendant's explanation for its decision to promote Buck and Ertle was pretext. It is well established that a plaintiff's conclusory allegations, without more, are insufficient to show pretext. *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir.1996).

Since Plaintiff has not made any showing that Defendant had a duty to consider him for the Delivery Coordinator position, and since Defendant has articulated legitimate, nondiscriminatory reason for Buck's promotion, which Plaintiff has not shown to be pretextual, Plaintiff's claim is insufficient to defeat summary judgement on this issue.

> 2. Defendant's argument that Plaintiff cannot show discrimination based on his termination.

Defendant argues that Plaintiff cannot establish a prima facie case of discrimination with regard to his termination because, among other things, Plaintiff has not alleged and cannot show that an employee outside of his protected class was treated more favorably.

Where a plaintiff "fails to show the existence of a similarly situated employee, summary judgment is appropriate where *no other evidence of discrimination is present.*" *Rioux v. City of Atlanta,* 520 F.3d 1269, 1277 (11th Cir. 2008) (emphasis and citation omitted); *see also Austin v. City of Montgomery*, 196 F. App'x 747, 750 (11th Cir. 2006) (affirming district court's summary judgment due to plaintiff's failure to show a similarly situated comparator).

14

In the instant case, Plaintiff purports to identify Ertle and Buck as comparators, however, these identifications are misplaced as neither Ertle nor Buck are alleged to have engaged in the conduct resulting in Plaintiff's termination. Plaintiff also admitted he was not familiar with *any* Caucasian employee who had committed a "no call no show" that was not disciplined or terminated. Moreover, Plaintiff has not alleged the existence of an insubordinate employee who was not disciplined or terminated. Accordingly, Plaintiff has not established a prima facie case of disparate treatment as he has not alleged that he was subjected to an adverse employment action in contrast with a similarly-situated employee outside of his protected class.

Even if Plaintiff were able to make a prima facie case of disparate treatment, Defendant has offered multiple non-discriminatory reasons for Plaintiff's termination and Plaintiff has not submitted evidence of pretext.

It is undisputed that when questioned regarding his absence on November 17, 2011, Plaintiff responded "[y]ou guys are going to do what you're going to do" and "this is ridiculous". Defendant has submitted that this disrespectful behavior alone justified termination. It is not the Court's "role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory motive." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000)). Indeed, "an employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187

(11th Cir. 1984). Plaintiff has not provided any evidence indicating a discriminatory intent; rather, he merely posits that he was terminated because he was a black man. As such, Plaintiff has not cited any evidence that would "cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997). It is therefore the Court's conclusion that summary judgment should be granted in favor of Defendant on the instant issue.

### B.     Hostile Work Environment Claim

Defendant argues that Plaintiff's hostile work environment claim fails as the behavior he alleged, even if taken as true, falls far short of being "severe or pervasive" as required under the law.

A claim for hostile work environment discrimination requires a plaintiff to show: "(1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller v. Kenworth of Dothan Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). The same standard also applies to hostile work environment claims under the Florida Civil Rights Act. *See Blizzard v. Appliance Direct, Inc.*, 16 So.3d 922, 926-27 (Fla. 5th DCA 2009).

Here, Plaintiff has only presented evidence of behavior and commentary that by his own admission did not reference race or national origin in any way. Plaintiff's allegations that Seeley "berated" him and talked about Plaintiff's incompetency are merely "generalized complaints of constant needling and criticism" that are insufficient as a matter of law to create a hostile work environment. *See*, *e.g.*, *Blackburn v. Shelby County,* 770 F. Supp. 2d 896, 929 (W.D.Tenn. 2011). This is also the case for Dodson's comments regarding Plaintiff's dress and vocabulary, which Plaintiff admitted did not bother him.

Additionally, Plaintiff's description of a single isolated comment by Seeley stating "well that's what you black guys do, you know, you box," is simply not sufficiently severe to state a claim for a hostile work environment. Indeed, the Eleventh Circuit has dismissed hostile work environment claims alleging significantly more serious conduct. *See*, *e.g.*, *Godoy v. Habersham Cty.*, 211 F. App'x 850, 853-54 (11th Cir. 2006) (affirming summary judgment where, *inter alia*, plaintiff endured racial slurs nearly every day, supervisor battered him, and told him "to go back to his boat and sail to South America where he belongs"); *Barrow v. Ga. Pacific Corp.*, 144 F. App'x 54, 57 (11th Cir. 2005) (affirming summary judgment where plaintiff's supervisor threatened to "kick [his] black ass," co-workers displayed the rebel flag, bathroom had KKK graffiti, a noose was found in a locker, and supervisors called plaintiff racially derogatory names).

Accordingly, as Plaintiff has failed to show that he was subjected to sufficiently severe conduct, he has failed to show a hostile work environment claim as a matter of law.

### C. Plaintiff's Retaliation Claims Under Section 1981 and the FCRA

Defendant's Motion argues that Plaintiff's comments to Miller do not qualify as protected expression under Title VII's opposition clause. Therefore, Plaintiff has not established a prima facie case for discrimination based on his termination.

To establish a claim of retaliation under Section 1981 or the FRCA, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events. *Butler v. Alabama Dep't of Transp.*, 536 F.3d 1209, 1212-13 (11th Cir. 2008).

Plaintiff does not sufficiently allege that he engaged in statutorily protected expression based on race. In order to constitute statutorily protected activity capable of supporting a § 1981 retaliation claim, an employee's complaint must reasonably convey that he is opposing discrimination based specifically upon race, versus some other type of discrimination or injustice generally. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 n. 1 (11th Cir. 2001). General complaints of harassment and hostile environment without relation to race do not amount to protected conduct. *Jeronimus v. Polk Cnty. Opportunity Council, Inc.*, 145 F. App'x 319, 326 (11th Cir. 2005). While Plaintiff argues that he spoke to Miller regarding Seeley's "harassment" which he described as "borderline on discrimination" and "against the law", these vague statements to Miller do not qualify as statutorily protected expression.

Plaintiff's argument that he was retaliated against also fails to show any causal connection between his complaints and his termination, and is based solely on his conclusory allegations of discrimination. To establish a causal connection between a

plaintiff's participation in a protected activity and a defendant's adverse employment action, a plaintiff must show that the "decision-maker was aware of the protected conduct," and "that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 578 (11th Cir. 2000). Plaintiff has the burden of persuasion "to proffer evidence sufficient to permit a reasonable fact finder to conclude that discriminatory animus was the 'but-for' cause of the adverse employment action." *Smith v. City of Fort Pierce, Fla.*, 12-15064, 2014 WL 1687746, at *3 (11th Cir. Apr. 30, 2014) (citing *Sims v. MVM, Inc.,* 704 F.3d 1327, 1332 (11th Cir. 2013) (reconciling "but-for" causation and the *McDonnell Douglas* framework in ADEA case, and affirming summary judgment where appellant could not establish that discriminatory animus was the but-for cause of his termination)). "Mere conclusory allegations of discrimination, without more, are insufficient to defeat a motion for summary judgment." *Woodbury*, 901 F. Supp. at 1565 (citing *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir. 1987); *McKeon v. Vaicaitis*, *Schorr*, *Richards*, *et al.*, 785 F. Supp. 965 (M.D.Fla. 1992)).

Plaintiff admits that he made his only complaints about harassment exclusively to Miller and that Miller did not retaliate against him. Plaintiff's ambiguous and unsupported testimony that Miller spoke to other managers about Plaintiff also does not support any causal connection between his comments and his termination, let alone that his comments were the "but-for" cause of his termination. Thus, Plaintiff has not made a prima facie case for his claim of retaliation

Even assuming *arguendo* that Plaintiff had made a prima facie case for retaliation, Defendant has met its burden to rebut the presumption by articulating a legitimate,

nondiscriminatory reason for its decision to terminate Plaintiff and Plaintiff has not submitted sufficient evidence to show pretext. *See Woodbury*, 901 F. Supp. at 1565 (citing *Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir.1985)); *Mayfield*, 101 F.3d at 1376 (11th Cir. 1996). For these reasons, the Court concludes that Plaintiff falls woefully short of demonstrating a genuine issue of fact for trial and summary judgment should be granted in favor of Defendant.

Upon review and consideration, it is therefore

ORDERED AND ADJUDGED that:

1. Plaintiff's Motion for Summary Judgment Florida Automotive Service LLC, A Wholly Owned Subsidiary of Asbury Automotive Inc. (Dkt. 65) is DENIED.

2. Defendant's Motion for Summary Judgment/Incorporated Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment (Dkt. 71) is GRANTED.

3. All pending motions are denied as moot.

4. The Clerk is directed to enter final judgment in Defendant's favor and against Plaintiff and thereafter shall close this case.

**DONE** and **ORDERED** in Tampa, Florida, this 10th day of July, 2014.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record